**DEHORTY, Lessee of Smith, v. PRUDENCE JONES et al.**

High Court of Errors and Appeals.   June 16, 1818.

*Ridgely's Notebook II, 142.*[*]

[*] This case is also reported in *Clayton's Notebook, 62.*

*Hall* for plaintiff in error. *Clayton* for defendant in error. . . .

CHANCELLOR RIDGELY. This case came before this Court at August, 1813, upon a writ of error directed to the Supreme Court, upon the same will, and upon the same point, on which it now depends. The question was precisely the same. At that time I delivered the opinion of the Court in the following words.

"Two questions have been made on the devise which has given occasion to this suit. First, whether the condition annexed to the devise of the land is repugnant to the estate given, or contrary to the policy of the law; and, secondly, whether John Dehorty, the devisee, committed a breach of the condition, supposing it to be a good one.

"When the testator annexed a condition that his son, John Dehorty, should not involve himself in debt, at any one time, to the amount of £30, we understand that the testator meant that his son John should not create or incur a debt, at any one time, to the amount of £30. We think that he used the word involve according to its common acceptation; and that he intended thereby to restrain his son, so far as such a condition could restrain him, from being indebted, at any one time and by the same contract, to the amount of £30. And this we do not think was an unreasonable restraint. It seems to have been the intention of the testator that his son should avoid such debts as he, the testator, supposed might lead to the sale of his land; but he did not mean to restrain him from owing, at the same time, by debts created at several times, to the amount of £30, or of a greater sum. And by thus allowing the son to create several small debts, the son was not too much restrained for his comfort or convenience or advancement in life; but a check was put upon him against the risk of such a mass of debt as, in the estimation of the testator, would involve him in ruin. This we think was the meaning of the testator. He did though become involved, at one time,

and by one debt, in a greater sum than £30; and we think that his excess of personal estate beyond that sum did not save him from a breach of the condition, if the condition is a good one.

"The question now occurs whether this condition with the limitation is repugnant to the estate devised, or contrary to the policy of the law. That part of the will which went to restrain the devisee from offering any part of the devised land for sale certainly is repugnant to the fee simple estate given to the son; but the condition annexed, that the devisee shall not involve himself in debt, at any one time, to the amount of £30, is not contrary to the policy of the law, nor inconsistent with, nor repugnant to the fee simple given to the son. It violates no principle of law. A man may go in debt, yet another may give an estate upon the condition that he shall not; and if he accepts it on the condition he is bound by it, at least so far as to forfeit the estate if he violates the condition. So a condition that a man shall marry such a woman is good enough; for although he may or he may not as he pleases, yet there is nothing against the policy of the law in doing or omitting it. So the case cited from 9 East 170, that a woman should not marry a Scotchman.

"Neither is this condition repugnant to the estate devised; for the devisee holds the land unrestrained in a single property or quality belonging to the estate devised. He may alien by deed, or will, absolutely, or partially. It is liable to his debts. His wife is entitled to her dower. It will descend according to law, and indeed is left unencumbered, like any other fee simple estate, provided the condition annexed to it be observed. It is not an incident of the estate that the devisee should become indebted to the amount of £30, therefore it is not repugnant to the estate. So the case in Co.Litt. 223a of a grant of one parcel of land on condition that the grantee should not alien another parcel of which he is seised in fee: the condition is good, for it is annexed to other land, and [deprives] [1] not the feoffee of his power to alien the land granted, and so is not repugnant. Now it is impossible that this condition should restrain the devisee in a single quality or property belonging to the estate devised. He holds it unencumbered and as free as any other lands as to all the incidents belonging to it.

"The case of the annuity, 6 Term 684, is very strong; for there the annuity was assignable, and yet the annuity was adjudged to cease on the breach of the condition. So perhaps the restraint upon assigning leases may be deemed stronger than the case before us. On the whole, we are of opinion that the judgment be

---

[1] Manuscript illegible.

reversed; and that judgment be rendered that the plaintiff below recover his term."

Such was the opinion delivered by this Court at August, 1813, and the judgment was entered that the plaintiff below should recover, etc. Afterwards, at an adjournment of the same term, on motion of Mr. Clayton, the judgment of this Court was corrected, and the cause was remanded to the Supreme Court, in order to [render] a final decision. At the second trial there, the judges of that court adhered to the opinion which they had first delivered, and instructed the jury that the condition was repugnant and void, and the jury found a verdict for the defendant accordingly. A bill of exceptions was taken to this second opinion, and the case now comes before this Court, precisely the same as at August, 1813.

After the judgment was rendered here two of the judges, BOOTH, C. J., and WARNER, Justice of the Court of Common Pleas, doubted the propriety of the opinion which had been heretofore delivered in this Court, and the case comes now before us for a revision of our own judgment, as well as the judgment of the Justices of the Supreme Court.

We are to consider this condition as it operates on the estate devised. Whatever scheme the testator might have had, the only consideration is whether the condition annexed to this devise is good in law.[2]

First. There can be no danger of a perpetuity, for the condition ends with the life of the devisee.

Second. The condition is not inconsistent with the estate given. It does not restrain any one incident belonging to it.

Third. The condition is not unlawful, for there is no rule or policy of the law which requires that a man should incur a debt to the amount of £30.

Fourth. It is not an impossible condition, for the devisee need not, *ex necessitate,* incur a debt at any one time to the amount of £30.

The material point in this cause is to consider whether the condition is inconsistent with, or repugnant to, the estate devised. In *Bradley v. Peixoto,* 3 Ves.Jr. 324, there was a legacy of bank stock, with a condition that the legatee should not dispose of it, which was certainly repugnant to the interest given to the legatee. So in Ambler 379, where an estate tail had been given with a condition that if the tenant in tail should "alienate, mort-

---

[2] At this point, *Ridgely's Notebook II, 147,* the account of this case is interrupted; it is resumed at *167.*

gage, incumber, or commit any act or deed whereby to alter, change, charge, or defeat the bequests," that then he should pay, and the premises were charged with the payment of £2000, "unto such person or persons, and his or their heirs, who could, should, or ought to take next, by virtue or means of any of the bequests or limitations." A common recovery was suffered, whereupon a bill was filed for the recovery of the £2000. It was adjudged that the proviso was repugnant to the estate devised; and so it was, because it is an incident of an estate tail that it may be barred by a common recovery. Although the proviso in that case is extensive, yet the question turned upon the single point whether a tenant in tail could be restrained from suffering a common recovery. So that case affords no new light to the one before us. The case of *Davidson v. Foley*, 2 Bro.C.C. 203, so far as the opinion of the Chancellor was expressed, seems to have been against the plaintiffs there, for he says he did not see what they expected to gain by their bill; but he would not stop them at that period of the cause, and therefore overruled the demurrer. That bill was afterwards dismissed, 3 Bro.C.C. 598, upon a point under the Annuity Act, 17 Geo. III, [c. 13.] Before the present argument of this cause, I had considered that case as bearing against the defendant in error, and the note in Co.Litt. 223b (1) clearly implies that the trust was good.

It is an indifferent thing whether the devisee incurs a debt to the amount of £30 or not; therefore it is not unlawful to restrain him. If it were his duty, or if the public good required that he should incur a debt contrary to the terms of the condition, then the condition would be void.

It is unnecessary to go through the cases cited for the plaintiff in error. In general I adopt them as applicable to the question before us. And from the best consideration which I have been able to give the subject, inasmuch as the condition is not repugnant to, nor restrictive of a single incident or quality of the estate devised, I am of opinion that it is a good condition.

PER CURIAM. Judgment reversed by the unanimous opinion of the Court.

---

### Note.

When the first judgment of the Supreme Court was reversed in the High Court of Errors and Appeals, at August, 1813, a judgment was rendered that the plaintiff in error, the plaintiff below, should recover his term, etc., although a verdict had been found in the Supreme Court against the plaintiff. Afterwards,

at December, 1813, at an adjourned court of the High Court of Errors and Appeals, *Mr. Clayton,* counsel for defendant both below and in error, moved the court to correct or alter their judgment upon the ground that such a judgment could not be rendered in the Court of Errors and Appeals against the finding of the jury. This motion came on to be argued at an adjournment of the Court of Errors and Appeals, December 3, 1814. The following is a copy of my notes:

*Mr. Clayton* for defendant in error. The entry on the record is erroneous. Constitution, Art. 7, s. 2, judgment to be given in the Court of Appeals. The court below could not give a judgment against the verdict of the jury. Here is a judgment not without a verdict, but against a verdict. On a special verdict such judgment could be given; but the Supreme Court could not have rendered such a judgment as this court has given. 2 Bac.Abr. 230. On special verdict against plaintiff, on writ of error court may give such judgments, etc. Roll.Abr. 774, Cro.Car. 512 cited. [The Court by the] Constitution, in action of ejectment cannot give judgment for plaintiff, because damages uncertain. Here the damages being uncertain, they must be assessed by jury. This Court cannot assess them.

*Mr. Hall* for plaintiff in error. As to damages [being] uncertain, [in ejectment] damages [are] nominal, always nominal [1 Chit.Pl. 188, 193, 2 Selw. 671].[3] On action for mesne profits, limitation may be pleaded. In ejectment, if damages were recovered, [there could be] no action for mesne profits. No damages are recovered in ejectment as it now stands. Action of ejectment is now a proceeding *in rem.* . . . 3 Wils. 118. . . . Constitution never meant [there to be] damages in ejectment. This could not be sent to the court below, because damages would be recovered in mesne profits. In truth, there is no fact in this cause to be ascertained by a jury. This case was put on the construction of a will. Bill of exceptions [is] conclusive on the party; that shows facts, that the title is in plaintiff unless the will shows otherwise. No facts to be tried. Here the facts are brought up on the record. Jury ascertains facts; but here they are admitted. No jury is necessary. 1 Salk. 401, if judgment be below for plaintiff, and error is brought and judgment reversed, yet if the record will warrant it, the court ought to give a new judgment for plaintiff. But if the judgment be erroneous and against the plaintiff on the merits, that ought to be reversed and a new judgment given for plaintiff. 2 Sell.Pr. 513, same point.

---

[3] References inserted from the list, appended by Ridgely, of authorities cited by Hall.

*Mr. Clayton.* The Constitution has adopted the common law. This court has gone beyond its power. No such judgment could be given below, except on a special verdict. [He] read the record of the Court of Errors and Appeals in [the] case of *Launcelot L. Smith v. A. Gibson.* [There are] several other such cases, [but] no such case as this. None such to be found in the English books.

PER CURIAM. We are of opinion, under the whole circumstances of the case, that the judgment should be altered, and that this case should be sent to the court below. We go upon the words and meaning of the Constitution, that this Court should render such judgment as the Supreme Court ought to have rendered. In the Supreme Court, an absolute verdict being found for the defendant, that court could not have rendered a judgment for the plaintiff. Had this been a special verdict on a case stated, the judgment heretofore rendered in this Court, and now about to be corrected, would have been strictly proper. Indeed, were there anything on the record, such as an agreement of the parties equivalent to a case stated, we should deem that sufficient to warrant it; but nothing appearing, we think we ought to correct it, that is, that part of it adjudging the plaintiff to recover his term. The precedents cited from the docket have generally passed without consideration; their circumstances are not known, and they have no influence on the decision now given. . . .